By the Court, Monell, J.
This case presents the unusual phase of two judgments in one action ; one in favor of the plaintiff against one of the defendants, and the other in favor of a defendant against the same co-defendant. The appeal is from both judgments.
I will first consider the appeal from the plaintiff’s judgment. On the sale by Smith, the trustee, to “ The Masterton, Smith & Sinclair Stone Dressing Company,” the latter paid to Smith one hundred thousand dollars of the purchase money, retaining in their hands ten thousand dollars, which, the justice has found, was retained to be .applied, in some form, in lieu of, and to the extinction of, Brewster’s note' and to the satisfaction of the debts of the Empire Stone Dressing Company.
The transaction, as I understand it, was this : Brewster and others, perhaps, (though it does not so appear,) shareholders in the Empire Stone Dressing Company, not only *523 agreed to the sale to Smith, of the assets of that company, for a consideration of one hundred and ten thousand dollars, but to pay the purchase money by their notes. The sale was in effect to themselves; their several notes, amounting, in the aggregate, to such sum, being given and received in payment thereof. The notes so taken in payment of such purchase money subsequently came into the hands of the receiver of the company. Smith, the trustee, agreed, upon the sale of the property by him, to pay the proceeds to the several persons entitled, under the declaration of trust by him, in proportion to their interests. He sold the property with the written consent of all the persons interested, except Brewster, and they afterwards formed the Masterton, Smith & Sinclair Stone Dressing Company, in which" each took stock equal to the amount of his interest in the property sold and its proceeds. Brewster having refused to become interested in the new company, demanded a return of his note, which was refused. The note remained in the hands of the receiver, who made some attempts to collect it, until he sold it at public auction, in April, 1857, after this action was commenced.
Upon this state of facts, it seems to me that the rights of the several parties to this action were otherwise than as found by the learned justice who tried the cause.
Brewster’s note was given in payment for his proportionate liability for the purchase money of the property sold to Smith ; and although called a memorandum note, was founded, as it appears to me, upon a good and valid consideration. It was undoubtedly believed that all the parties would become shareholders in the new company to be formed,' and that their respective interest therein should be the same as stated in the declaration of trust, and as represented by their several promissory (memorandum) notes ; and it was also believed, that all the notes would be paid. Brewster, at no time, agreed to go into the new company, but steadily refused so to do, and demanded the surrender of his note. He consented to a sale of the property at the sum named, but he in no wise ever relinquished his claim on Smith, the trustee, to be paid his *524 proportion of the purchase money; nor has he ever relinquished any claim he may have had, upon the purchasers from Smith.
It will not be doubted, that if Brewster had paid his note to the receiver, his right of action against the defendants, the Masterson, Smith & Sinclair Stone Dressing Company, would have been complete. The ten thousand dollars retained by that company, would then have belonged to him. In what respect is the case changed by his non-payment of his note ?
During all the time the receiver held the noté, Brewster remained liable upon it, and I have not been able to discover any reason why its payment could not have been enforced. The consideration was sufficient, being the conveyance of the property to Smith; and the Empire Stone Dressing Company had parted with value, and was, therefore, entitled to recover upon it. Hence, whether Brewster paid his note or not, his claim on Smith, as trustee, for his share of the purchase money on the sale by him, was unchanged ; neither such trustee, nor the Masterton, Smith & Sinclair Stone Dressing Company, could object to payment on any such ground.
The conclusion of the learned justice on this branch of the case was, that pursuant to the arrangement and agreement of the parties, Brewster’s note should have been returned to him. But it was not returned to him; nor can I find any evidence that the Empire Stone Dressing Company, or the receiver of that company, ever consented that it should be returned. They continued to hold it, and made an attempt to collect it; but did nothing to relieve or discharge Brewster. They could have done so, and doubtless Brewster would have been satisfied with the arrangement, and would have relinquished all claim upon Smith, or upon the Masterton, Smith & Sinclair Stone Dressing Company. But instead of returning the note, Mr. Sanford, who acted as the agent of the company, refused to return it, and insisted upon Brewster’s liability upon it.
In this situation, Brewster, with a right to ten thousand dollars in the hands of the Masterton, Smith & Sinclair Stone Dressing Company, in some form,, with his note held by the receiver, he being liable upon it, assigned his claim to the *525 plaintiff. After which, and after the commencement of this action, the receiver sold such note at public auction.
After the learned justice had arrived at the conclusion, that Brewster’s note should have been returned to him, it was clearly inconsistent to hold, that Brewster had no claim against any of the parties, “ except so far as he might be liable or compelled to pay” something upon his note. He was liable, if at all, for the whole amount, and the receiver had no right to return it without payment, and his claim arose on the terms of the trust, not on his liability for his note.
The theory of the decision was, that Brewster, by his refusal to join the new company, had ceased to be liable upon his note, and by ceasing to be liable, lost all share of the proceeds of the sale. I think that cannot be so, and that the receiver was right in not thinking so. He attempted to collect it, and finally sold it, assuming to give a good title to the purchaser.
I have been unable also to discover the principle upon which the recovery, by the plaintiff, was confined to the amount bid for the note. The plaintiff, as Brewster’s assignee, it seems to me, was entitled to receive the whole of his interest in the property conveyed to Smith, and its proceeds, or nothing. But as the plaintiff has not appealed, he is presumed to be satisfied with his judgment, and it is unnecessary to say any thing further on that branch of the case, except that I am of opinion that the judgment in favor of the plaintiff should be affirmed.
Smith was a mere trustee, having no interest in the property. While in the execution of the trust, he could have collected from the defendents the Masterton, Smith and Sinclair Stone Dressing Company, the residue of the purchase money, and applied it in discharge of the claim of Brewster. He died without doing so. Upon his death, the trust did not devolve upon his representatives, (1 B. 8. 731, § 68,) and his executors could not be made liable for the amount remaining unpaid of the purchase money. How far Smith, in his lifetime, or his executors, since his death, might have been liable for Brewster’s portion of the one hundred thousand dollars actually received, *526 is a question out of the case. The dismissal of the complaint as to Smith’s executor was correct.
If the views expressed with reference to the plaintiff’s judgment are correct, it follows, necessarily, that the receiver’s judgment cannot be sustained.
In support of the latter judgment it is said, that inasmuch as the unpaid purchase money was for the same property for which Brewster had given his note to Sanford, there is an equity in favor of the Empire Stone Dressing Company, the original proprietor of the property, to be indemnified for loss on the Brewster note.
If the company had continued .the holder of the Brewster note, it may be, that in some form appropriate action, they might have reached the debt due to Brewster from- the Masterton, Smith & Sinclair Stone Dressing Company, and applied it towards or in satisfaction of Brewster’s debt to them. The difficulty, however, is, that they did not continue to held the note ; they parted with the ownership and possession, at a public sale, and- thereby extinguished the whole of Brewster’s indebtedness to the company. They took the note from Brewster as payment and they must be held to be satisfied with what they got.
The equity of the Empire Stone Dressing Company must arise, if at all, from some liability or indebtedness of Brewster to them ; and not upon any right in, or claim to, the avails of the proprerty conveyed by Smith to the defendants, the Masterton, Smith & Sinclair Stone Dressing Company. Having a legal claim against Brewster, the law might subrogate them to all the rights of Brewster, although the equitable power of the court might have to be invoked to do it.
The several conveyances were absolute, and a complete title to the property passed. The Empire Stone Dressing Company retained no lien upon it, legal or equitable. They were content to receive in payment, the notes of the purchasers, and to these notes alone can they look for indemnity.
The company had the power and right to retain their demand against Brewster; but they saw fit to subject it—a *527 chose in action—to a public sale to the highest bidder. And that was done after the plaintiff had acquired all the rights .of Brewster to the unpaid purchase money.
Having no claim against Brewster, and no claim or lien upon the property, I cannot see how there can be an equity in favor of the Empire Stone Dressing Company. Equities must have something to stand upon. They cannot be propped up or supported without a foundation. Here the only foundation has been removed, and the supposed equities must fall.
There seems to have been floating about the case, some idea that because Brewster desired to get up his note, and refused to embark in the new enterprise, and had surrendered all interest in the matter, therefore, the Empire Stone Dressing Company could step into his place and acquire all his rights. No such conclusion can be deduced from the facts of the case ; they are hostile to any such right. There is nothing in the opinion delivered in the general term of this court, when this case was up upon a former appeal, which conflicts with the views here expressed. It was conceded that while Brewster’s note was outstanding he was entitled to his share of the consideration of the new purchase, and could claim the amount from the Masterton, Smith & Sinclair Stone Dressing Company “ as so much property of his own in their hands for his use.”
The view I have taken of the case, renders it unnecessary for us to examine the other exceptions ; or to determine whether for other reasons the receiver's judgment can be sustained. It is enough, that in our opinion the learned justice erred in his conclusions of law, and that the judgment in favor of the receiver must, therefore, be reversed; and there must be a new trial.
The judgment in favor of the plaintiff must stand ; as to that, there cannot be a new trial.
The judgment against the defendants, the Masterton, Smith & Sinclair Stone Dressing. Company, must be reversed, and as to those defendants and their co-defendant Platt, the receiver of the Empire Stone Dressing Company, there must be a new trial, the costs of the appeal to abide the event.